FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Jan 27 2022

KEVIN P. WEIMER, Clerk

By: s/Kari Butler
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOSHUA EDWARD MARCHMAN, | : | PRISONER HABEAS CORPUS |
| GDC No. 1085232, | : | 28 U.S.C. § 2254 |
|     Petitioner pro se, | : | |
| | : | |
|     v. | : | |
| | : | |
| TARMARSHE SMITH, Warden, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:20-CV-4490-SDG-WEJ |

## ORDER AND
## FINAL REPORT AND RECOMMENDATION

Petitioner, Joshua Edward Marchman, a state prisoner currently confined at Macon State Prison in Oglethorpe, Georgia, has filed a pro se 28 U.S.C. § 2254 habeas corpus Petition challenging his 2012 Cobb County convictions and sentences for two counts of malice murder, kidnapping with bodily injury, kidnapping, armed robbery, and aggravated assault. (Pet. [1] at 1.) The matter is before the Court on the § 2254 Petition, the state's Response, and petitioner's Reply. For the reasons stated below, **IT IS RECOMMENDED** that the Petition be **DENIED** and that no certificate of appealability issue.

## I.    PROCEDURAL HISTORY

On March 29, 2012, a Cobb County grand jury returned a 22-count indictment against petitioner and his codefendant, Joshua Arnold, charging

petitioner with two counts of malice murder ("Counts 1 & 2"), four counts of felony murder ("Counts 3, 4, 7, 8"), two counts of kidnapping with bodily injury ("Counts 9 & 10"), kidnapping ("Count 11"), six counts of aggravated assault ("Counts 12, 13, 14, 15, 16, 17, "), and five counts of armed robbery ("Counts 18, 19, 20, 21, 22"). (Resp. Ex. 5 [12-5] at 23-34.) Ultimately, petitioner proceeded to a joint trial with Arnold. The Supreme Court of Georgia summarized the evidence adduced at trial as follows:

> [I]n the weeks prior to the evening [of July 9, 2009], Marchman, Arnold, and Isaiah Walker, who was also a party to the crimes (but who took his own life to avoid apprehension), were engaged in a dispute with Dimitri Hunter and some of his friends, including victims Nicholas Garner and Brandon Cox. Hunter, Garner, and certain others performed in a rap group together and would flash wads of cash during their performances at local clubs and on videos that were available for review on YouTube.
>
> On July 9, 2010, Marchman, Arnold and Walker told [Kayla Cochran] that they were looking to purchase marijuana and also wanted to "hit a lick," meaning to rob someone. As a result of calls that were made, Hunter, who was to deliver the marijuana, arrived by automobile with his friends Lateisha Weatherspoon and Shanice Green at the place where the three conspirators were waiting to make the purchase. Armed with handguns, Marchman and Walker entered the car Green was driving, a white Impala. Walker put a gun to Hunter's head, demanded the occupants' cell phones, and ordered Green to drive. Upon having Green pull the car over, Marchman and Walker discovered Hunter was armed with an extended-magazine Glock pistol. They disarmed Hunter, began pistol-whipping him, and forced him into the Impala's trunk. They then met up with Arnold, who commenced following Green's Impala in a blue Marquis. At some point, the two cars stopped at a convenience store/service station

where the perpetrators retrieved Hunter out of the Impala's trunk and forced him into the Marquis' trunk. Their actions were captured on the business' surveillance videotapes. The perpetrators, still holding Green, Weatherspoon, and Hunter against their will, continued to drive around Cobb County in the two cars.

Eventually, the three perpetrators, now covering their faces, delivered Hunter to the home where Aaron Garner lived with his brother Nicholas Garner, and used Hunter as a decoy to trick Aaron into letting them in the door. Upon entering, Marchman and Walker commenced beating Aaron and continued beating Hunter. Shortly thereafter, Nicholas Garner arrived home in a car driven by Brandon Cox, and Nicholas went inside to retrieve gas money he had agreed to pay Cox. Upon entering his home, Nicholas was held at gunpoint. When Marchman and Walker realized someone was waiting outside in a car, they forced Nicholas to persuade Cox to come inside. Marchman and Walker then held all four men at gunpoint, tortured them with a hot spoon, and ransacked the home looking for money and marijuana. Meanwhile, Arnold was holding Weatherspoon and Green captive in the Marquis while he continued to drive around, during which time he communicated with Marchman and Walker via the stolen cell phones. Green was pregnant, and in an effort to escape she faked labor pains and urinated on herself to make it appear her water had broken. Ultimately, Arnold released her at a hospital but threatened to kill Weatherspoon and Hunter if she informed anyone about the crimes that were transpiring. At the urging of friends, however, she reported her car as being stolen. Once her torched car was discovered, Green told investigators in detail what had transpired.

When Marchman and Walker, still at the Garner residence, learned by telephone that one of the hostages had been released, they were heard saying they now had to kill all the witnesses. Hunter, Cox, and Nicholas Garner were shot at the Garner residence, though only Nicholas was fatally wounded. Marchman and Walker left the scene, after which Aaron Garner and Cox escaped and were able to seek assistance. A crime scene investigation was commenced at the Garner residence, where Nicholas Garner's body was found.

In the continuing crime spree, at around 3:00 a.m., the three perpetrators arrived in two separate vehicles at the home of their friend Marcus Woodward, who saw a female sitting in an Impala parked in the driveway.  Arnold and Walker drove both cars away from Woodward's home while Marchman stayed inside.  They drove to a remote location, shot Weatherspoon in the head, and doused the Impala in which she was killed with gasoline and lighted it on fire.  Several destroyed cell phones were found in the car when it was discovered along with Weatherspoon's body.  Woodward testified that when Walker and Arnold returned to his home in the Marquis, he noted a distinctive odor of gasoline.  After the burned-out Impala was discovered, and based upon information gathered from witnesses, law enforcement began searching for a blue Marquis, and they located a car matching that description driving down the road near the burned-out Impala's location.  Walker was in the front passenger seat of the car and, either at gunpoint or by intimidation, he was forcing Woodward to drive.  When a patrolman attempted to make a traffic stop, Walker fired at him, striking the patrol vehicle several times. A car chase ensued, and when the Marquis approached a road block, Walker took his own life with a gun that proved to be the one taken from Hunter.  Shell casings from the gun matched casings found at the site of the Garner home invasion.

DNA testing confirmed Hunter had been in the trunk of the Marquis.  The medical examiner's testimony established that the cause of Nicholas Garner's death was multiple gunshot wounds, and that the cause of Lateisha Weatherspoon's death was a gunshot wound to the head.  Using cell phone records and other evidence, law enforcement was able to confirm that Marchman and Arnold were involved in the criminal enterprise.  Before he was arrested, Marchman fled to Alabama, where he made incriminating statements about these crimes to a witness who testified at trial.  Arnold's fingerprints were found in multiple places on the Marquis, including the front passenger door, the trunk and the fuel door.  Marchman and Arnold were identified at trial by the victims as well as other witnesses who observed the drug transaction that started the events in question.

Marchman v. State, 299 Ga. 534, 534-37 (Ga. 2016).

The jury convicted petitioner of all counts.  (Resp. Ex. 5 [12-6] at 32-37.)
The trial court sentenced petitioner to life without the possibility of parole.  (Id. at
40.)   Petitioner appealed, and the Supreme Court of Georgia affirmed his
convictions and sentences on June 20, 2016.  Marchman, 299 Ga. at 545.

Petitioner filed a state petition for a writ of habeas corpus.  (Resp. Ex. 1
[12-1].)  Following an evidentiary hearing, the state court denied his habeas petition
on February 5, 2020.  (Resp. Ex. 3 [12-3].)  Petitioner sought a certificate of
probable cause to appeal the denial of habeas relief, but the Supreme Court of
Georgia denied his application on August 10, 2020.  (Resp. Ex. 21 [20-7].)  The
instant § 2254 petition followed.

## II.   28 U.S.C. § 2254 MOTION

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus
on behalf of a person being held in custody pursuant to the judgment of a state court
if that person is held in violation of his rights under federal law.  28 U.S.C.
§ 2254(a).  If a state court has adjudicated a claim on the merits, a federal court
may grant habeas relief only if the decision of the state court (1) "was contrary to,
or involved an unreasonable application of, clearly established [f]ederal law, as
determined by the Supreme Court," or (2) "was based on an unreasonable
determination of the facts in light of the evidence presented in the [s]tate court

5

proceeding." 28 U.S.C. § 2254(d)(1), (2).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  Butts v. GDCP Warden, 850 F.3d 1201, 1212 (11th Cir. 2017) (quotation marks omitted).  This is "a substantially higher threshold" than a determination that the state court's decision was incorrect, and, as such, relief is not warranted if the federal court concludes that the state court's application of federal law was merely erroneous.  Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

A state court's factual findings are presumed correct absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 324 (2003) (citation omitted).  When the relevant state court decision is not accompanied by a reasoned opinion explaining why relief was denied, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."  Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

6

### A.    Ground 1

In Ground 1, petitioner alleges that the trial court erred by admitting phone records that the state obtained without a search warrant, in violation of petitioner's, Fourth, Fifth, Sixth, and Fourteenth Amendment rights.  (Pet. [1] at 5.)

The state responds that petitioner's Fourth Amendment claim is barred by Stone v. Powell, 428 U.S. 465 (1976), because petitioner fully and fairly litigated this claim in state court—both at trial and on direct appeal.  (Resp. [11-1] at 5-6.) The state further responds that petitioner's Fifth and Sixth Amendment claims are barred by Teague v. Lane, 489 U.S. 288 (1989), because the Supreme Court has not extended these Amendments to the search and seizure context.  (Id. at 6.)

Petitioner replies that the admission of his cell phone records obtained without a warrant violated his Fourth Amendment rights as articulated in Riley v. California, 573 U.S. 373 (2014).   (Reply [30] at 11-13.)[1]   To the extent that Petitioner acknowledges that the challenged call and location data was obtained from his cell phone provider, he apparently argues that Riley's holding should be

---

[1] To the extent that this Court has considered Petitioner's 64-page Reply, his Motions for leave to file excess pages [25], [29] are **GRANTED**.

extended to preclude phone carriers from providing data in their possession to law enforcement without a warrant.  (Id. at 14.)

Fourth Amendment claims are not usually cognizable in federal habeas petitions.  See Stone, 428 U.S. at 494-95.  Specifically, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." Id. at 494.  "[F]ull and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990).

Here, the Fourth Amendment issue presented in Ground 1 was litigated in state court at a motion to suppress hearing and on direct appeal.  See Marchman, 299 Ga. at 538-39.  Petitioner has not alleged, much less shown, that he did not have an opportunity for full and fair litigation of this claim in state court. Accordingly, the Fourth Amendment claim is barred from federal habeas review. See Stone, 428 U.S. at 494.  To the extent that Petitioner attempts to allege Fifth and Sixth Amendment violations related to this claim, Petitioner has articulated no theory for how the Fifth and/or Sixth Amendments would be implicated by the allegedly warrantless search.  See U.S. Const. Amends. V, VI; Tejada v. Dugger,

8

941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to federal habeas relief "when his claims are merely conclusory allegations"). Ground 1 does not warrant relief.

### B.     Grounds 7, 8, 12, 13, 18, 21

In these grounds, Petitioner alleges, respectively, that (7) his trial counsel was ineffective for failing to investigate his mental competency; (8) the trial court abused its discretion by failing to <u>sua sponte</u> order a competency hearing; (12) his trial counsel was ineffective for failing to adequately investigate the state's witnesses; (13) his trial counsel was ineffective for waiving petitioner's motion to sever; (18) the trial court violated petitioner's right to self-representation when it deviated from the procedures described in <u>Faretta v. California</u>, 422 U.S. 806 (1975), in denying his oral motion to represent himself; and (21) his trial counsel was ineffective for failing to effectively impeach the state's witnesses with their prior inconsistent statements.  (Pet. [1] at 22-23, 26-27, 31, 33.)

The state responds that Grounds 7, 8, 12, 13, 18, and 21 of the § 2254 Petition are barred from federal habeas review because the state court held them to be procedurally defaulted under state law.  (Resp. [11-1] at 6-7, 10-11.)  The state asserts that petitioner has not shown cause and prejudice to overcome the default. (<u>Id.</u> at 11.)

Petitioner replies by reiterating the merits of his claims.  (See Reply [30] at 26-30, 37-43, 51-53, 57-59.)  Petitioner does not address the state's contention that these grounds are procedurally defaulted.  (See generally Reply [30].)

Claims that have been held to be procedurally defaulted under state law cannot be addressed by federal habeas courts.  Caniff v. Moore, 269 F.3d 1245, 1246 (11th Cir. 2001).   Procedural default may be excused, however, if the petitioner establishes cause for, and actual prejudice resulting from, the default, or a fundamental miscarriage of justice.  McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).  When "[a] state court finds insufficient evidence to establish cause and prejudice to overcome a procedural bar, [a federal habeas court] must presume the state court's factual findings to be correct unless the petitioner rebuts that presumption with clear and convincing evidence." Greene v. Upton, 644 F.3d 1145, 1154 (11th Cir. 2011) (quotation marks omitted).

Petitioner raised these grounds in his state habeas corpus petition as grounds 1, 2, 6, 8, 13, and 16, respectively.  (See Resp. Ex. 1 [12-1].)  The state habeas court dismissed these claims as procedurally defaulted under state law because petitioner failed to raise them on direct appeal.  (See Resp. Ex. 3 [12-3] at 21-27); see also O.C.G.A. § 9-14-48(d) (providing that habeas corpus relief shall not be granted unless the petitioner made a timely objection and otherwise complied with Georgia

10

procedural rules on trial and on appeal, and, in the event that the petitioner had new counsel subsequent to trial, the petitioner raised any claim of ineffective assistance of trial counsel on appeal); Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the cause and prejudice test.") (quotation marks omitted).  Consequently, § 2254 Grounds 7, 8, 12, 13, 18, and 21 are barred from federal habeas review.  See Caniff, 269 F.3d at 1246 Additionally, petitioner has not presented clear and convincing evidence to rebut the state court's finding that he did not show cause and prejudice to overcome the default.  See Greene, 644 F.3d at 1154.  Accordingly, Petitioner is not entitled to relief on these grounds.

### C.   Grounds 2 & 4

In Ground 2, Petitioner alleges that the trial court violated his Fifth and Fourteenth Amendment rights by reading the party-to-a-crime and the failure-to-prosecute-principals instructions to the jury.  (Pet. [1] at 7.)  In Ground 4, petitioner alleges that his Fifth and Fourteenth Amendment rights were violated when the trial court permitted a witness to identify petitioner from a surveillance video when the witness was not present during the event depicted in the video.  (Id. at 10.)

11

The state responds that the federal claims raised in Grounds 2 and 4 are newly raised in the § 2254 Petition and, thus, unexhausted and procedurally defaulted under Georgia's successive petition rule.  (Resp. [11-1] at 7-10.)

Petitioner replies that his presentation of Grounds 2 and 4 on direct appeal should have been understood to raise federal claims because the claims did not specify that they were being raised solely on state law grounds and the Due Process Clause clearly applied.  (Reply [30] at 17, 21-22.)  Petitioner otherwise reiterates the merits of his claims.  (See id.)

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  28 U.S.C. § 2254(b)(1).  Moreover, in order to exhaust fully his state remedies, a petitioner "must make the state court aware that the claims asserted present federal constitutional issues."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).  "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  Zeigler v. Crosby, 345 F.3d 1300, 1307 (11th Cir. 2003) (quotation omitted).  Rather, the petitioner must have articulated the constitutional theory serving as the basis for relief in state court. Gray v. Netherland, 518 U.S. 152, 162-63 (1996) (explaining that, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include

reference to a specific federal constitutional guarantee"). A federal claim is procedurally defaulted where the petitioner failed to properly exhaust the claim in state court, and it is obvious that the unexhausted claim would now be barred under state procedural rules. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Petitioner raised claims similar to Grounds 2 and 4 on direct appeal. (See Resp. Ex. 19 [20-4] at 21-22, 25-26.) However, petitioner's appellate claims cited only to state law without reference to any federal constitutional provision. (See id.) Contrary to petitioner's assertions, it is not enough merely to raise a factual predicate that could support a federal claim or an analogous state-law claim, but a petitioner must actually reference a federal source of law. See Zeigler, 345 F.3d at 1307; Gray, 518 U.S. at 162-63. Consequently, the federal claims in Grounds 2 and 4 are unexhausted and procedurally defaulted because they would now be barred by state procedural rules restricting successive petitions. See Bailey, 172 F.3d at 1302-03; O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) (holding that Georgia's successive petition statute "can and should be enforced in federal habeas proceedings" against unexhausted claims). Petitioner has not alleged cause and prejudice to overcome the default. Grounds 2 and 4 do not warrant relief.

13

**D.    Grounds 3 & 5**

In Ground 3, petitioner alleges that his Fifth and Fourteenth Amendment rights were violated when the trial court admitted Shanice Green's identification testimony after she was previously presented with an unconstitutionally suggestive photo lineup.  (Pet. [1] at 8.)  Petitioner alleges that Green described the men who kidnapped her as "black males who were wearing black shirts."  (Id.)  Petitioner contends that the photo lineup presented to Green was impermissibly suggestive because he was the only person in the lineup wearing a black shirt, and he was the only person looking down while all the other individuals were looking straight ahead.  (Id.)

In Ground 5, petitioner alleges that his Fifth and Fourteenth Amendment rights were violated when the trial court admitted Kayla Cochran's identification testimony after she was previously subjected to an unconstitutionally suggestive identification procedure—namely, that a detective showed her a picture of petitioner and asked if the suspect looked familiar.  (Id. at 20.)

The state responds that the Supreme Court of Georgia's denial of these claims on direct appeal was reasonable and is entitled to deference.  (Resp. [11-1] at 11-12.)    Specifically, the state notes the Supreme Court of Georgia's determination that, even if the out-of-court identification procedures were unduly

suggestive, Green's and Cochran's in-court identifications did not depend on the out-of-court identifications, but had an independent origin based on the time that the witnesses spent with petitioner and the other perpetrators and the opportunities that the witnesses had to observe them.  (Id. at 14-15.)

Petitioner replies that there is a very substantial likelihood that Green's and Cochran's in-court identifications were irreparably tainted by impermissibly suggestive out-of-court identifications and otherwise reiterates the merits of his arguments.  (Reply [30] at 17-20, 22-23.)

A pretrial identification and subsequent in-court identification may amount to a due process violation if the pretrial procedure was unnecessarily suggestive and conducive to irreparable mistaken identification.  Stovall v. Denno, 388 U.S. 293, 302 (1967) (abrogated on other grounds by U.S. v. Johnson, 457 U.S. 537 (1982)).  Reliability is the linchpin in determining the admissibility of identification testimony under the totality of the circumstances.  Manson v. Brathwaite, 432 U.S. 98, 114 (1977).  In determining whether an identification is reliable, a court must consider five factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness

at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Here, the Supreme Court of Georgia's denial of these claims was not unreasonable or contrary to clearly established federal law. The Court applied the correct reliability-under-the-totality-of-the-circumstances test and concluded that petitioner had not shown a likelihood of irreparable mistaken identification because the witnesses' testimony made clear that their in-court identifications were based on the significant amount of time they spent in petitioner's presence, during which time they had good opportunities to view him. See Marchman, 299 Ga. at 540-42; see also Stovall, 388 U.S. at 302; Manson, 432 U.S. at 114. As a result, the Supreme Court of Georgia's denial of these grounds is entitled to deference and Grounds 3 and 5 are due to be denied.

### E.    Ground 6

Petitioner alleges in Ground 6 that the evidence was insufficient to sustain his convictions for malice murder, aggravated assault, kidnapping, and armed robbery. (Pet. [1] at 21.) Petitioner asserts that the evidence against him was entirely circumstantial and did not exclude every reasonable hypothesis of innocence. (Id. at 21-22.) Petitioner states that there was no evidence directly

linking him to the crimes such that no properly instructed, reasonable jury would have convicted him.  (Id.)

The state responds that the Supreme Court of Georgia determined on direct appeal that the evidence was sufficient to sustain petitioner's convictions. (Resp. [11-1] at 15.)  The state further asserts that the Court's application of controlling federal law was reasonable and its denial of this claim is entitled to deference.  (Id. at 15-17.)

Petitioner replies that the state's evidence did not prove anything except that he was an associate of people involved in the offenses, which is insufficient to convict him of a crime.  (Reply [30] at 26.)  Petitioner otherwise reiterates his contention that circumstantial evidence alone was insufficient to sustain his conviction when it did not exclude every reasonable hypothesis of innocence.  (Id.)

The Due Process Clause of the Fourteenth Amendment protects an accused person against conviction except on proof beyond a reasonable doubt of every material element of the offense.  In re Winship, 397 U.S. 358, 364 (1970).  However, federal habeas review of the constitutional sufficiency of evidence in a state criminal prosecution is limited.  Martin v. Alabama, 730 F.2d 721, 724 (11th Cir. 1984).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

17

essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "Jackson leaves [the trier of fact] broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that [the trier of fact] draw reasonable inferences from basic facts to ultimate facts." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quotation marks omitted).

Thus, "the only question under Jackson is whether [the trier of fact's] finding was so insupportable as to fall below the threshold of bare rationality." Id. at 656. Accordingly, a sufficiency claim in a § 2254 petition is subject to "two layers of judicial deference." Id. at 651. First, a court may set aside a jury verdict "only if no rational trier of fact could have agreed with the jury," and, second, a state court decision may only be overturned if it was "objectively unreasonable." Id.

Here, the Supreme Court of Georgia applied Jackson and concluded that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt. Marchman, 299 Ga. at 537. The Court emphasized that (1) Hunter and Green identified petitioner as one of their kidnappers, (2) Cochran identified petitioner and Arnold as two of the three men in a blue Marquis who spoke to her about finding marijuana and "hitting a lick" and who entered Hunter's car when he arrived, (3) Cox identified petitioner as one of the men who attacked and robbed

18

him at the Garner residence, (4) Woodward identified petitioner as one of the three men who arrived at his house with guns, cash, marijuana, and a ski mask in an Impala and a Marquis a short time after the Garner home invasion, (5) Woodward further testified that petitioner remained at his house while the other two men drove away in both cars with a female passenger in the Impala, and, when the other two men returned without the Impala or its female passenger, they smelled of gasoline, (6) phone records showed that a cell phone associated with petitioner was used to call Hunter's phone during the crime spree after Hunter's phone was taken from him, and that Arnold was using Hunter's phone while he was holding the women hostage and petitioner and Walker were at the Garner residence; and (7) petitioner made incriminating statements to a friend in Alabama where he fled after the crimes were committed.  Id.  On this record, and in light of the double deference to which § 2254 insufficiency claims are subject, the Supreme Court of Georgia's denial of this claim was not contrary to clearly established federal law and is entitled to deference.  See Coleman, 566 U.S. at 655.  Ground 6 does not warrant relief.

**F.     Grounds 9 & 10**

Petitioner alleges in Ground 9 that his appellate counsel was ineffective for failing to raise on direct appeal that his trial counsel was ineffective for failing to investigate his competence to stand trial.  (Pet. [1] at 23.)  Petitioner states that he

19

had acknowledged that he had been treated by psychologists or psychiatrists in the past, and his trial counsel had obtained funds for a mental evaluation that was never conducted.  (Id. at 23-24.)

In Ground 10, petitioner alleges that his appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred by failing to sua sponte order a hearing to determine petitioner's competency.  (Id. at 24.)  Petitioner contends that the trial court "raised concerns" about his capacity to represent himself and was aware that he had received treatment from a psychiatrist or psychologist in the past.  (Id.)  As a result, petitioner argues that the trial court was obligated to sua sponte conduct a competency hearing but failed to do so.  (Id.)

The state responds that the state habeas court reasonably denied analogous claims in petitioner's state habeas corpus petition and that decision is entitled to deference.  (Resp. [11-1] at 17.)  The state emphasizes Petitioner's testimony during his Faretta hearing that he was not taking any medications and that he had not been diagnosed with a mental illness."  (Id. at 17-19.)

Petitioner replies that appellate counsel's testimony at his state habeas evidentiary hearing that "he didn't see anything in terms of talking with petitioner that would ha[ve] led him to determine that he was mentally deranged or had mental problems" and that raising a competency issue on appeal would have been

20

"frivolous" was self-serving and should be disregarded because appellate counsel was not a mental health expert.  (Reply [30] at 30-31.)  Similarly, petitioner argues that the state habeas court's reliance on his own <u>Faretta</u> testimony was unreasonable because he is not a mental health expert and could not vouch for his own competence.  (<u>Id.</u> at 32.)

The Sixth Amendment right to counsel includes the right to the effective assistance of competent counsel.  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 & n.14 (1970).  To make a successful claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88.  Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  The same standard utilized by courts to analyze claims of ineffective assistance of trial counsel under <u>Strickland</u> also applies to appellate counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1300 (11th Cir. 2013).  If the petitioner makes an insufficient showing on the prejudice prong, the court need not address the

21

performance prong, and vice versa.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

"The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  Harrington v. Richter, 562 U.S. 86, 105 (2011).  The Supreme Court has emphasized that the Strickland standard is a general one with a substantial "range of reasonable applications" and that federal habeas courts "must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)."  See id.  "Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants."  Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995).  The standard for determining a defendant's competence to stand trial is whether the defendant has the present ability to consult with an attorney with a reasonable degree of understanding, and whether the defendant has a rational and factual understanding of the criminal proceedings.  Dusky v. United States, 362 U.S. 402, 402 (1960).  The mere diagnosis of mental illness alone is not enough to establish that a defendant was incompetent to stand

trial. <u>Medina</u>, 59 F.3d at 1107 ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quotation marks and alterations omitted); <u>see also</u> <u>Pardo v. Sec'y, Fla. Dep't of Corr.</u>, 587 F.3d 1093, 1101 (11th Cir. 2009) (holding that "[e]vidence of incompetence must indicate a present inability to assist counsel or understand the charges.  Absent evidence of such an inability, evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence to stand trial").

Due process requires a trial court to hold a competency hearing <u>sua</u> <u>sponte</u> when presented with information raising a bona fide doubt about a defendant's competency to stand trial. <u>Pate v. Robinson</u>, 383 U.S. 375, 385 (1966).  Similarly, counsel's performance is deficient if he fails to bring information raising a bona fide doubt about the defendant's competency to the trial court's attention when every reasonable attorney would have done so.  <u>See</u> <u>Johnston v. Singletary</u>, 162 F.3d 630, 635 (11th Cir. 1998) ("[U]nder certain circumstances, trial counsel's failure to apprise the court of a client's changing mental state—thereby depriving the court of critical information regarding its own potential duty to hold a [competency] hearing—can constitute ineffective assistance.").  To establish

23

prejudice in this context, a habeas petitioner must show that "there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing." Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 479 (11th Cir. 2012).

Here, the state court applied Dusky and determined that there was nothing in the record suggesting, much less demonstrating, that petitioner was not competent to stand trial. (Resp. Ex. 3 [12-3] at 14-15.) The court noted trial counsel's representations that he only requested funds for a mental evaluation for possible sentencing mitigation purposes, and not due to any suspicion of impairment. (Id. at 15.) The court also noted petitioner's sworn Faretta hearing testimony that he was not taking any medication and had not been diagnosed with any mental illness. (Id.) Finally, the state court found that all of petitioner's contentions about what additional competency investigation could have shown were entirely unsupported and speculative. (Id.)

The state court's decision was consistent with clearly established federal law. The mere fact that petitioner had received psychological or psychiatric treatment at some unspecified time in the past did not establish that he was incompetent. See Medina, 59 F.3d at 1107; Pardo, 587 F.3d at 1101. Petitioner has not identified anything in the record that would have raised a bona fide doubt about his

24

competency, particularly in light of his <u>Faretta</u> responses.  Finally, Petitioner has not alleged at any point in his state or federal habeas proceedings that he was actually incompetent to stand trial—<u>e.g.</u>, that at the time of trial he was presently unable to assist his attorney or understand the charges against him.  <u>See</u> <u>Dusky</u>, 362 U.S. at 402.  Consequently, he has not shown prejudice stemming from any failure by his attorney or the trial court to seek a competency evaluation.  <u>See</u> <u>Lawrence</u>, 700 F.3d at 479.  Grounds 9 and 10 are due to be denied.

### G.     Ground 11

In Ground 11, Petitioner alleges that his appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred by limiting the defense's ability to present expert testimony on witness identification.   (Pet. [1] at 25.) Specifically, the trial court limited the proposed defense expert's testimony to any studies she may have done or general knowledge she possessed, but prohibited her from testifying on the procedures used by law enforcement to obtain Green's and Cochran's out-of-court identifications or from offering any opinion on the reliability of Green's and Cochran's identifications.  (<u>See</u> Resp. Ex. 3 [12-3] at 9.)

The state responds that the state habeas court reasonably denied this claim and that decision is entitled to deference. (Resp. [11-1] at 19-20.)  The state argues that petitioner was not prejudiced by the trial court's decision to limit expert

testimony because there was substantial corroborating evidence to support Green's and Cochran's identifications, as laid out by the Supreme Court of Georgia when discussing sufficiency of the evidence.  (Id. at 20.)

Petitioner replies that his convictions were based on unreliable identifications and that the result of the proceedings likely would have been different if he had been allowed to solicit expert testimony on the unreliability of those identifications.  (Reply [30] at 35-36.)

In denying this claim, the state court noted the Supreme Court of Georgia's sufficiency discussion on direct appeal and found that there were five witnesses who had identified petitioner and that there was substantial corroborating evidence for Green's and Cochran's identifications from cell phone records and petitioner's own incriminating statements.  (Resp. Ex. 3 [12-3] at 15-16.)  Consequently, the state court determined that Petitioner had failed to show a reasonable probability that the result of his appeal would have been different if appellate counsel had raised this claim.  (Id. at 16.)

This decision was not contrary to Strickland.  As noted in the discussion of Grounds 3, 5, and 6, supra, the state court reasonably determined that there was an independent basis for Green's and Cochran's in-court identification testimony, and there was substantial corroborating evidence of petitioner's guilt.  Ground 11 does

not warrant relief, particularly under the doubly deferential standard that applies to ineffective assistance claims under § 2254(d).  See Harrington, 562 U.S. at 105.

### H.      Grounds 14 & 15

Petitioner alleges in Ground 14 that his appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred in denying petitioner's renewed request for severance.  (Pet. [1] at 28.)  Petitioner contends that his codefendant's unspecified statements and acts were so inflammatory that he could not obtain a fair trial without severance.  (Id. at 28-29.)  Petitioner appears to be referring to "threats" that his codefendant made while he and petitioner were being transported to court on a jail bus.  (See Resp. Ex. 3 [12-3] at 10.)  Similarly, in Ground 15 petitioner alleges that his appellate counsel was ineffective for failing to raise on direct appeal that his trial counsel was ineffective for failing to obtain severance of petitioner's trial from his codefendant's.  (Pet. [1] at 28-29.)

The state responds that this Court should defer to the state habeas court's denial of these claims.  (Resp. [11-1] at 35.)  The state argues that petitioner and his codefendant were properly tried together under Georgia law because they were tried for almost the same offenses, the law and evidence was substantially the same for both of them, and they acted together in committing the crime.  (Id. at 21-22.)

Petitioner reiterates the merits of his claims in reply.  (Reply [30] at 43-47.)

The state court reasonably applied <u>Strickland</u> and determined that petitioner had not shown that he was prejudiced by appellate counsel's failure to challenge his joint trial with his codefendant. (Resp. Ex. 3 at [12-3] at 17.) The evidence of his codefendant's threats was presented only against his codefendant. (<u>See</u> <u>id.</u>) Additionally, because petitioner has presented no credible argument that his joint trial was improper under state law, his appellate counsel was not ineffective for failing to raise meritless claims. <u>See</u> <u>Lupoe v. State</u>, 300 Ga. 233, 241-42 (Ga. 2016) (explaining that the decision to try codefendants together or separately is within the trial court's discretion considering: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses and that severance is only required where a defendant makes a clear showing that a joint trial would lead to prejudice and a consequent denial of due process). These grounds do not warrant relief.

## I.    Ground 16

In Ground 16, petitioner alleges that his appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred when it denied his motion to dismiss the indictment due to prosecutorial vindictiveness. (Pet. [1] at 29.) Petitioner contends that the state vindictively re-indicted him after he filed motions

28

to suppress and refused to plea bargain, presenting more severe charges carrying increased punishment even though no material facts had changed.  (Id. at 29-30.)

The state responds that the state habeas court's denial of this claim is entitled to deference.  (Resp. [11-1] at 22-23.)  The state contends that petitioner was re-indicted in order to elevate one of the counts of kidnapping to kidnapping with bodily injury because the state had received evidence that kidnapping victim Hunter had, in fact, been injured during his kidnapping.  (Id. at 23.)

Petitioner replies that the second indictment should be subject to a presumption of vindictiveness because it greatly increased the potential punishment by adding an additional count of armed robbery and kidnapping with bodily injury, exposing petitioner to two more potential life sentences.  (Reply. [30] at 48-49.)

"A prosecutor may seek a superseding indictment at any time prior to a trial on the merits." United States v. Cole, 755 F.2d 748, 757 (11th Cir. 1985); United States v. Del Vecchio, 707 F.2d 1214, 1216 (11th Cir. 1983).  However, a superseding indictment adding new charges that increase the potential penalty would violate due process if the prosecutor obtained the new charges out of vindictiveness.  United States v. Spence, 719 F.2d 358, 361 (11th Cir. 1983). Vindictiveness in this context means the desire to punish a person for exercising his rights.  United States v. Goodwin, 457 U.S. 368, 372 (1982).

29

"While a prosecutor's decision to seek heightened charges after a successful *post-trial* appeal is enough to invoke a presumption of vindictiveness, proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the *pretrial* context."  United States v. Barner, 441 F.3d 1310, 1316 (11th Cir. 2006) (emphasis in original) (quotation omitted); see also United States v. Gamez–Orduno, 235 F.3d 453, 462 (9th Cir.2000) ("[I]n the context of pretrial plea negotiations vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from the defendant's exercise of a right.").  Rather, it is generally the defendant's burden to prove actual vindictiveness in a pre-trial situation with facts forming a realistic likelihood of vindictiveness.  Barner, 441 F.3d at 1317.

Here, the state courts denial of this claim was not contrary to federal law. Petitioner is not entitled to a presumption of vindictiveness in the pre-trial context. See id. at 1316.  The state court credited the trial court's factual finding that the prosecution re-indicted petitioner because it had obtained evidence that Hunter had suffered bodily injury during his kidnapping, warranting more severe charges. (Resp. Ex. 3 [12-3] at 18-19.)  Petitioner has not rebutted the state court's factual findings with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

30

Consequently, the state court's denial of this claim is entitled to deference and petitioner is not entitled to relief.

### J.     Ground 17

Petitioner alleges in Ground 17 that he was denied his due process rights when the state tracked his movement using cell phone location data without establishing the ownership of the phone.  (Pet. [1] at 30.)

The state responds that this ground fails to state a claim because the Supreme Court has not extended the Due Process Clause to govern searches and seizures, and Petitioner has already presented the associated Fourth Amendment claim. (Resp. [11-1] at 23-24.)

In his reply, petitioner apparently recharacterizes Ground 17 as raising a Fourth Amendment challenge to the state's tracking of his movements using cell phone location data.  (Reply [30] at 50-51.)  Petitioner argues that the cell phone data should have been suppressed.  (Id. at 51.)

To the extent that petitioner attempts to raise a due process claim, location tracking using electronic devices constitutes a "search" within the meaning of the Fourth Amendment.  See, e.g., United States v. Jones, 556 U.S. 400, 404 (2012) (holding that the government's tracking of a vehicle with a GPS device constituted

a search).   Plaintiff's due process challenge to the state's location tracking is misapplied and fails to state a claim.

To the extent that petitioner tries to raise a Fourth Amendment challenge to the use of his cell phone location data, he already presented such a challenge in Ground 1, supra, and any duplicative claim will fail for the same reasons.  Petitioner is not entitled to relief on Ground 17.

**K.    Ground 19**

In Ground 19, petitioner alleges that his appellate counsel was ineffective for failing to promptly provide him with all transcripts and court records after the conclusion of his direct appeal.  (Pet. [1] at 32.)  Petitioner states that he repeatedly requested appellate counsel to send him all transcripts and court records so that he could prepare his state habeas corpus petition, but counsel's failure to do so hindered his ability to present grounds for habeas relief.  (Id. at 33.)

The state responds that this ground fails to state a claim because it concerns events that occurred after the conclusion of petitioner's criminal proceedings and not during a critical stage of the criminal case itself.  (Resp. [11-1] at 24-25.)

Petitioner replies that his appellate counsel testified at his state habeas corpus evidentiary hearing that counsel gave the records to another individual with the

understanding that individual would convey the records to petitioner. (Reply [30] at 53.) However, petitioner asserts that he never received the records. (Id.)

Here, Petitioner's Ground 19 fails to state a claim for federal habeas relief. Under § 2254, a state prisoner may file a federal habeas petition only on the ground that he is in custody pursuant to the judgment of a state court in violation of the constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). As a result, habeas corpus is not an appropriate remedy for challenges that do not undermine the legality of the detention or imprisonment—i.e., the conviction itself. Carroll v. Sec'y, Dep't of Corr., et al., 574 F.3d 1354, 1365 (11th Cir. 2009). Because petitioner's claim that his appellate counsel failed to forward records to him occurred after the conclusion of his criminal proceedings, it does not attack the legality of his imprisonment and is not cognizable on federal habeas review.

## III.   GROUND 20

In Ground 20, Petitioner alleges that his appellate counsel was ineffective for failing to ensure that a copy of Shanice Green's recorded interview was sent to the Supreme Court of Georgia as part of the record on appeal, especially considering that counsel referenced the interview in his brief as Exhibit 1. (Pet. [1] at 32.) Petitioner asserts that the recorded interview showed law enforcement officers coaching Green to pick petitioner out of a photo lineup. (Id. at 32-33.)

The state responds that the state habeas court's denial of this claim is entitled to deference.  (Resp. [11-1] at 25.)  The state notes that petitioner did not actually produce the recorded interview and it was not otherwise present in the state habeas record, and, as a result, his assertions about its contents were speculative and the state court determined that he could not show prejudice.  (Id.)

Petitioner reiterates the merits of his claim in reply.  (Reply [30] at 56-57.)

The state court reasonably applied Strickland and concluded that petitioner had not shown prejudice because the recorded interview was not part of the state habeas record, and, consequently, his speculative assertions about its contents were insufficient to show prejudice.  (Resp. Ex. 3 [12-3] at 19); see also Aldrich v. Wainright, 777 F.2d 630, 636 (11th Cir. 1985) (noting that speculation is insufficient to carry the burden of a habeas corpus petitioner).  Moreover, as noted in Ground 3, supra, the state courts reasonably concluded that there was an independent basis for Green's in-court identification of petitioner.  Ground 20 is due to be denied.

Accordingly, because none of the claims presented warrant habeas corpus relief, **IT IS RECOMMENDED** that the § 2254 petition be **DENIED**.

34

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, a petitioner cannot appeal the final order in a habeas corpus proceeding "unless a circuit justice or a circuit or district judge issues a certificate of appealability ["COA"] under 28 U.S.C. § 2253(c)."  Because reasonable jurists would not debate the resolution of the issues presented, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.  See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  If the District Court adopts this recommendation and denies a certificate of appealability, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  28 U.S.C. foll. § 2254, Rule 11(a).

## V.   <u>CONCLUSION</u>

For the reasons stated above, **IT IS RECOMMENDED** that the 2254 Petition [1] be **DENIED** and that no certificate of appealability issue.

Petitioner's Motions for leave to file excess pages [25], [29] are **GRANTED**.

The Clerk of Court is **DIRECTED** to terminate the referral to the undersigned United States Magistrate Judge.

35

**SO ORDERED AND RECOMMENDED**, this 27th day of January, 2022.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE